CITY OF YOUNGSTOWN, APPELLEE, *v.* SHEETS, APPELLANT.

(No. 3356—Decided April 5, 1950.)

*Mr. I. Freeman* and *Mr. H. J. Fugett,* for appellee.
*Mr. Clyde H. Dyson,* for appellant.

PHILLIPS, P. J.   Defendant in the Municipal Court of Youngstown, called defendant here, was arrested for, charged with, pleaded not guilty to, tried for, and convicted by a jury of operating an automobile within the corporate limits of plaintiff city while under the influence of intoxicating liquor.

The trial judge subsequently duly entered judgment upon the verdict of guilty, imposed a fine of $100 and costs of trial upon defendant, suspended his license to operate his automobile for one year, and sentenced him to be imprisoned in the Mahoning county jail for thirty days.

Defendant appealed to this court on questions of law from the judgment of the trial court.

For his sole assigned ground of error, defendant contends that the trial judge erred to defendant's prejudice in overruling his motion made before a jury was selected, witnesses sworn, and evidence introduced, "to challenge the entire array of the jury for the reason that it was not drawn according to the rules of the court and in a proper manner" in that all the jurors were residents of the "first and fifth wards" of the city of Youngstown, which violated the provisions of rule 24 of the Municipal Court of the city of Youngstown, which provides:

"On the first day of October, 1931, said commissioners shall meet at the office of the clerk at 9:00 a. m. and shall there select such number of judicious and discreet persons not less than two hundred (200), having the qualifications of electors of the city of Youngstown, Ohio, as the judges may direct, to be selected as nearly as may be from the several wards in proportion to their respective population. When it shall become necessary thereafter, the commissioners shall meet at such time and place as the presiding judge may select, and shall there select such additional number of persons as the court, by its order entered on the Journal, may direct."

The right of challenge to the array was conferred upon defendant by Section 11419-50, General Code, which provides:

"A challenge to the array may be made and the whole array set aside by the court, when the jury, grand or petit, was not selected, drawn or summoned, or when the officer who executed the venire did not proceed as prescribed by law. But no challenge to the array shall be made or the whole array set aside by the court, by reason of the misnomer of a juror or jurors; but on challenge, a juror or jurors may be set aside by reason of a misnomer in his or their names; but such challenge shall only be made before the jury

is impaneled and sworn, and no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualifications to act as jurors.''

The names of 27 prospective jurors, the only names in the jury wheel at the time they were drawn, all of whom resided in the first, second, fourth and fifth wards of plaintiff city, were drawn from the jury wheel. Five resided within one block of one of those wards, and names of residents of the first ward predominated.

In response to the question, ''that is the list of the jurors that were called for this case?,'' one of the jury commissioners testified:

''Well now I will explain this here to you very completely. I think when we pull a jury we pull a juror by wards and precincts—and we take one name of the Republicans and one of the Democrats, and we jump ten names and we have never yet at any time taken over twenty-five names I believe, from any particular ward. Now that is the way that is done right there.''

While jurors who were residents of only four wards of plaintiff city were empanelled and sworn, there is no evidence that the names of jurors were not placed in the jury wheel in accordance with law and the provisions of rule 24 of the Municipal Court of Youngstown; or that there was any fraud in the drawing of their names from the jury wheel.

We find nothing in the evidence to indicate that the jury commissioners failed to discharge the mandatory duty imposed upon them by Section 11419-50, General Code, in the selection of names of prospective jurors; nor do we find evidence of any irregularity in the selection of the panel from which the jury to try defendant was drawn; or that any of the jurors did not possess the requisite qualifications of a juror; or that the

defendant was prevented from having a fair and impartial trial; or that any substantial right of defendant in any way sustaining his right to a challenge to the array was affected; or that defendnt was prejudiced in any manner or otherwise deprived of a fair and impartial trial by jury. Neither do we find any facts to bring the case we review within the decision of *Armstrong* v. *Cleveland Ry. Co.*, 31 O. D. (N. P.), 500, 18 O. L. R., 538.

In the *Armstrong case*, upon which defendant relies heavily to secure a reversal of the judgment of the trial court, it was said, *inter alia*:

"The provisions of Section 11423, General Code [which is now 11419-50], prescribing the duties of jury commissioners in the selection of names of jurors, is mandatory. Hence, a challenge to the array lies to a jury, the names of which were selected substantially from one or two precincts instead of from the several precincts of the county."

That case is distinguished from the case we review by the fact that in the *Armstrong case* names of prospective jurors were not selected from a list containing names of the residents of the several wards of the city of Cleveland, as required by statute.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

NICHOLS and GRIFFITH, JJ., concur.